## HOOPES AND PURNELL *v.* BURNETT AND WITHERS.

Where H. and P., acting as attorneys for B. and W., obtained a judgment in their favor against M. for a large amount, and the attorneys by letters to B. and W., who were non-residents, represented to B. and W. that M. was insolvent, and the judgment could not be made, and requested the power to be conferred on them or one (H.) by B. and W. to compromise the judgment against M. for a nominal sum and payment of costs of the suit, which power was conferred upon H., one of the attorneys, and the judgment against M. was compromised for a very small sum, which was received by H. and paid over to B. and W.; but in the mean time an action of ejectment had been brought against H., one of the attorneys, by M. and wife, for an interest claimed in a house and lot then occupied by H., and which was sufficient in value to satisfy the judgment of B. and W. against M., and by a private agreement between H. and M. (which at the time was kept from B. and W.), M. and wife dismissed their action of ejectment against H. in consideration that the judgment of B. and W. against M. should be released, which was done; and H. required from M. and wife a deed for the property they had sued him for; and it was in consummation of this arrangement with M. that induced H. to represent to B. and W. the insolvency of M., but this agreement between H. and M. was never communicated to B. and W. by H. *Held,* that H. the attorney shall be compelled to convey the property obtained from M. and wife to B. and W., provided he shall first have sixty days within which to pay the judgment of B. and W. against M.; but upon failure to do this, he must convey the property.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

Hoopes and Burnell *v.* Burnett and Withers.

This was a bill filed in the superior court of chancery by Burnett and Withers against Hoopes and Purnell, to compel Davis H. Hoopes, one of the parties defendant, to convey to complainants, by a special warranty deed, two thirds of a house and lot, with the improvements thereon, in the town of Port Gibson, which he, Hoopes, as one of complainants' attorneys, purchased with a judgment for the sum of $1,397.26, obtained by Hoopes and Purnell, as attorneys for Burnett and Withers, against Samuel McComb, on the 14th day of October, 1846; which judgment was compromised by Hoopes, one of the attorneys for Burnett and Withers, upon Hoopes' representation to them that McComb was insolvent, by receiving from McComb one hundred dollars, and he paying cost of the suit.

The full and detailed facts of the case are set forth in the opinion of the court.

The court below decreed in favor of the complainants, Burnett and Withers, and Hoopes appealed to this court.

*Potter*, for appellants,

Cited and commented on 1 Story, Eq. § 654, &c. ; 2 A. K. Marsh. 582; *Louvalle* v. *Menard*, 1 Gilm. 445; *Sneed* v. *Atherton*, 6 Dana, 276; *Borah* v. *Archer*, 7 Ib. 176; 5 Johns. Ch. 406, &c.

*W. G. Thompson* and *Hoopes* on the same side.

*Thrasher* and *Sellers*, for appellees,

In reply, cited 2 Story, Eq. § 1211; *Green* v. *Winter*, 1 Johns. Ch. 36; 5 Ib. 409; 5 Atk. 53; 2 Story, Eq. § 1261; 2 Johns. Ch. 252; 1 Story, Eq. § 321, &c. ; 2 Ib. § 506; 5 Johns. n. a; 2 Johns. Ch. 252; 3 How. U. S. R. 333; 9 Paige, 241; Ib. 663; 4 Cow. 738, &c.; 2 Story, § 219; 5 Monr. 129; 6 Bac. Abridg. 370; 1 Black. Com. 44; Coke, Lit. 360; 2 Cranch, 272; 7 Johns. 477; 3 Bibb, 180; 4 Ib. 53; 3 Marsh. 179; 2 Gal. 100; 2 N. Hamp. 115; 8 Dana, 65; 2 Kent, 333, &c.; Ib. 271, &c.

Mr. Justice FISHER delivered the opinion of the court.

The appellants, as attorneys at law, obtained a judgment for the sum of $1,397.76, in favor of the appellees, in the circuit court of Claiborne county, against one Samuel McComb. Hoopes, one of the appellants, represented McComb to be insolvent; and by the letter containing this representation desired the appellees to confer upon the attorneys authority to compromise, for the sum of one or two hundred dollars, the judgment with McComb. The appellees rejected this proposition. It is again renewed by Hoopes; and after a correspondence, running through several months, the appellees were induced, upon the representations of Hoopes, to release McComb from the judgment for the sum of $100, Hoopes paying the costs, and releasing attorneys' commissions.

The appellees state in their bill, that they were induced to execute the release solely on the ground that McComb was represented by Hoopes to be hopelessly insolvent, and that the sum of $100 was all that could be obtained. This statement of the bill is fully sustained by the letter written by the appellees in reply to one written by Hoopes.

The bill avers, that in procuring the above release, Hoopes concealed from his clients the true state of facts relative to said compromise, in this: that McComb and wife had commenced their action of ejectment against Hoopes, to recover from him an interest of two thirds of a lot of ground, on which his residence was situated; that McComb and wife, having a good title to the same, would have succeeded in prosecuting to final judgment their action of ejectment; that, in consideration of having McComb released from said judgment, they agreed with Hoopes to dismiss their action of ejectment, and convey to him their interest in said property; that it was to consummate this arrangement for the benefit of Hoopes himself, that induced him to make the representations which he did make as to McComb's insolvency, &c.; that the fact that McComb and wife were willing to give their interest in discharge of the judgment against McComb, was never communicated or intimated by Hoopes to the appellees; and that, in keeping this fact concealed, and stating that the sum of $100 was all that McComb would pay to be released from the judgment, Hoopes practised a fraud upon the rights of the appellees.

Hoopes and Purnell *v.* Burnett and Withers.

It is further shown, that the release was executed as advised by Hoopes; that he delivered it to McComb, and received from him and wife a deed conveying their interest in the lot to Hoopes. The property is alleged to be of sufficient value to satisfy the judgment.

The chancellor rendered a decree, requiring Hoopes to convey the interest acquired from McComb and wife to the complainants. From this decree, the cause has been brought by appeal into this court.

It is objected, that the decree is erroneous in not giving Hoopes the privilege of paying to the complainants the amount of the judgment, and retaining the property. We think this objection well taken, and that the decree in this respect ought, under any view of the case, to be modified.

But, it is said that no case for relief has been made out by the complainants, and that therefore the bill ought to be dismissed.

So far as this controversy is concerned, it may be regarded as true, as stated by Hoopes, that McComb, the judgment debtor, was insolvent, and that nothing could be made by legal process out of him on the judgment. The attorney was, for a considerable time, engaged in a correspondence with his clients, endeavoring to convince them that the sum of $100, the payment of commissions and court costs, constituted the best arrangement that could be made with the judgment debtor. Believing the statements of the attorney to be true, the clients finally consented to release their debtor upon these terms; and if these statements of the attorney embodied the whole truth of the matter, there is no doubt but the attorney would stand acquitted of all blame in the transaction. The fact is now shown, that McComb never proposed to pay to the attorney any sum of money whatever to be discharged from the judgment. He never made but the one proposition, and that was the one stated: that he would dismiss his action of ejectment and convey the title arrayed against Hoopes, if he would procure a release of the judgment from the appellees. This was McComb's proposition. He made no other. This proposition, so far from being communicated to the clients, and their action

requested thereon, was by the attorney studiously concealed from his clients. How, then, does the case stand? The clients are bound by the release only so far as the facts prove true, as communicated by the attorney. They gave their assent to the transaction as he presented it for their consideration. They said to the attorney, trusting in the truth of your statements, we will be governed by your advice, and will do what you advise us is the best that can be done in the premises. This is briefly the case, as made out against the attorney. How does he meet it? He confesses that he was endeavoring to benefit himself, and not looking to the true interest of his client, in making the arrangement with McComb. It is true, he says that the claim of McComb and wife was unjust, and could not have been sustained against him, and that he was anxious to sell his property, and for this reason alone, was willing to pay the appellees the sum of $100, commissions and costs. This may all be true; but it is not the question involved in this case. This part of the transaction was never submitted to the clients. It was never intimated to them that their debtor would give this property in payment of their judgment. The attorney knew that the debtor was anxious to do so, for he was at the very time negotiating to consummate the arrangement. Instead of communicating what the debtor proposed to do, and the condition of the title, the attorney says that the debtor will pay only $100 to be released, and procures his clients to release the debtor upon such terms.

When the truth of the transaction, as it existed, comes to be understood, the fraud is palpable. McComb and wife were pursuing Hoopes for two thirds of his house and lot. McComb proposes to release this claim, if he can be released from the judgment. Now, compare this proposition with the one submitted by Hoopes to his clients, that McComb would pay $100 to be released from the judgment; and can they be identified as even parts of the same transaction? Does not the fraud at once, in the most glaring manner, show itself? The attorney is interested in saving his home, and McComb is interested in getting rid of the judgment against him; and the only hope of the attorney to make a good arrangement is to do what he

does not appear to have done before, to open a correspondence with his non-resident clients, and to convince them, if possible, of the hopelessly insolvent condition of their debtor.   The attorney suggests that, under our laws, the judgment can be sold for costs, and that the debtor will pay one or two hundred dollars for a compromise.   They answer that, rather than make such a compromise, they would prefer their attorney's drawing on them for the costs.   This was an intimation which, under ordinary circumstances, would have been readily understood by an attorney looking alone to his client's interest.   But, not at all disconcerted, he descends to particulars, and assures his clients that he is doing what he conceives it is his duty to do, and regrets that his letter has been misunderstood, &c., taking good care again to reiterate the insolvency of McComb.   But it is not necessary to continue this statement of the prominent facts, showing that it was the commencement of the action of ejectment for his house and lot that aroused the attorney to commence and persevere in this correspondence with his clients, hoping to profit, himself, by the arrangement he with such earnestness urged them to make.

The case may be briefly stated thus :  The clients never consented for the attorney to take the two thirds interest of McComb and wife in the lot, in payment of the judgment.   In this respect, the attorney acted without authority.   He took property without authority, in payment of his clients' judgment.   They have a right to ratify his act, and to take the amount of the judgment, if the attorney prefers paying it, this being the extent of the injury and of the damages occasioned by reason of the fraud established.   The decree may operate somewhat harshly upon the defendant; but it is the only one which, under the circumstances, can be made.   He took upon himself to show, at all times, that he communicated the true state of facts to his clients, when he procured their release of the judgment.   His duty required him to make a full disclosure of the transaction, as it existed.   He acted at his peril, when he kept part of it concealed from his clients.   He cannot profit by this concealment.   What he acquired must inure to the benefit of those

whom the law required him to represent "with all good fidelity."

The decree will be modified so as to give the appellant Hoopes the right to pay the amount of the judgment as ascertained by the decree below, within sixty days from this date. On failure to pay in that time, the property to be conveyed as directed by the decree.