OPINION OF THE COURT
Joseph J. Sedita, J.
Defendant Niagara County has moved to dismiss this action for failure to state a cause of action.
In January of 1972, the plaintiff was convicted of the criminal sale of a controlled substance in the third degree. In the fall of 1973, new evidence became available via a Grand Jury investigation. This evidence was favorable to the plaintiff. He learned of this new evidence through newspaper coverage of the investigation. Upon learning of this new evidence, he wrote to the Niagara County Judge seeking assistance in order to file a writ of error coram nobis. The *354 County Judge forwarded the request to the County Public Defender’s office, and assigned the case to that office. An affidavit by the plaintiffs fiancée indicates that he asked her to check into the matter several months after his request for assistance. She allegedly visited and called the Public Defender’s office on several occasions but was unsuccessful in obtaining any information about the case. In November of 1976, the Public Defender finally filed the necessary papers and moved to vacate the plaintiffs conviction. In December of 1976, the Public Defender’s motion was granted and the plaintiff herein was released pending a new trial. In July of 1977, he commenced this action alleging malicious prosecution, false imprisonment, and negligence by both the City of Niagara Falls and the County of Niagara.
Essentially, the court must consider four issues in order to decide this motion. If potential liability exists on any of these issues, this motion must be dismissed:
1. Can the county be held liable for the alleged wrong done to the plaintiff by the County Judge?
2. Can the county be held liable for the alleged wrong done to the plaintiff by the District Attorney?
3. Can the county be held liable for the alleged negligence of the Public Defender in failing to expeditiously pursue plaintiffs case?
4. Can the county be held liable for the failure of county officials (Judge, District Attorney and/or Public Defender) to perform ministerial act(s) (i.e., plaintiffs file was lost or misplaced)?
There is little question that both the Judge and the District Attorney are cloaked with "judicial immunity” (see Jamison v State of New York, 4 Misc 2d 326), Zimmerman v City of New York, 52 Misc 2d 797). The United States Supreme Court has upheld the doctrine of judicial immunity even in the face of a malicious and severely damaging action by a State Judge (Stump v Sparkman, 435 US 349; see, also, Pierson v Ray, 386 US 547).
Since the County Judge and the District Attorney possess immunity, their alleged wrongdoing cannot be imputed to the county.
The real issues that this court must examine in determining this motion are the question of whether or not "judicial immunity” is applicable to the office of Public Defender in *355 cases where there has been either a wrongful act of discretion or where there has been a ministerial error. The court takes note of the fact that this issue has not before been decided by any New York court and a diversity of opinion exists on this issue in other jurisdictions. This court would appear to be faced with a case of the first impression.
The Public Defender, like the District Attorney and County Judge, is a public official who receives his compensation from the county. His responsibility, like that of the Judge and District Attorney, is to insure that justice is achieved within the context of our adversary system.
Although the orientation of the Public Defender is toward a particular assigned client, by fulfilling that role he permits the judicial system to function in a manner which increases the probability that justice will prevail. To this extent, a Public Defender serves the public as much as he serves his particular assigned client or clients. The effectiveness and respect generated by a judicial system will be weakened or strengthened in direct proportion to the achievement of justice on a case-by-case basis. Yes, a Public Defender, like a Judge or District Attorney, is as much a servant of the public as a servant of his individual clients.
Since our society does not have either unlimited funds to provide legal service or unlimited legal talent, the Public Defender is often put in a position where he is assigned an overwhelming number of cases. Because his (or her) services are "free” indigent defendants will often pursue claims or motions which have little if any chance of success. The imposition of potential liability to every assigned client will no doubt have a detrimental effect on the Public Defender’s ability to effectively allocate his limited time and resources to those matters which in his judgment have a realistic chance for success. He does not have the option, as do his colleagues in private practice, to refuse to handle a frivolous matter. Additionally, the prospect of a potential lawsuit arising out of each and every "frivolous” claim which is not handled expeditiously, may well make it difficult to recruit capable personnel to the office of Public Defender.
The court notes that an allegedly "aggrieved” defendant would not be left totally without a remedy if his Public Defender did not proceed promptly. He can of course proceed pro se, notify the Judge of the Public Defender’s lack of diligence, and pursue other State or Federal postconviction *356 remedies such as habeas corpus. The granting of judicial immunity to a Public Defender does not encourage irresponsible conduct. A careless Public Defender may still face discipline by the Bar Association and/or the appellate courts. He may be removed from his position if he fails to perform his duties in a responsible fashion.
We are substantially in agreement with the reasoning of the Federal Appellate Court, Third Circuit, which stated its conclusion on this issue succinctly and well: "We perceive no valid reason to extend this immunity to state and federal prosecutors and judges and to withhold it from state-appointed and state-subsidized defenders. Implicit in the extension of judicial immunity to prosecutors was the recognition of a public policy encouraging free exercise of professional discretion in the discharge of pre-trial, trial, and post-trial obligations. Indeed, the very reasons advanced to assert that the Public Defender acts under color of state law because of the favorable comparison of his activities with those of public prosecutors, would, a fortiori, support an argument in favor of the public defender on the immunity issue.” (Brown v Joseph, 463 F2d 1046, 1048-1049; see, also, Minns v Paul, 542 F2d 899; and John v Hurt, 489 F2d 786).
It is the opinion of this court that Public Defenders are immune from civil liability for judgmental or discretionary acts or decisions taken or made in pursuance of their responsibilities as Public Defenders. Since Public Defenders are found to be cloaked with this immunity, it follows logically that this immunity would extend to the county.
The final issue which this court must resolve is the question of liability where the alleged damage has been caused not by an act of discretion or judgment, but by a clerical or ministerial error. The weighty policy considerations which lead to the affirmation of the application of judicial immunity to Public Defenders are premised upon the need for freedom to exercise judgment and discretion in making legal decisions or recommendations. These same policy considerations do not apply to ministerial acts, and cannot be permitted to cloak the negligent performance of a ministerial task requiring no judgment or discretion. A "ministerial” act is by definition not a "judicial” act and should not be protected. The New York courts that have examined this narrow issue have concluded that the doctrine of judicial immunity does not apply to purely ministe *357 rial acts (Luckie v Goddard, 171 Misc 774; Waterman v State of New York, 35 Misc 2d 954).
This court has found no reason to depart from this sound and reasonable distinction. The allegations and affidavits presently before this court indicate that there may be a basis in the facts of this case for a showing that the plaintiffs file was either misplaced or confused with another file. Since the Public Defender is appointed by the county, any negligence found in the performance of a strictly ministerial function may be imputed to the county.
The question of the District Attorney’s obligation to divulge information obtained through a Grand Jury investigation is moot due to the fact that the plaintiff in fact received that information from another source.
Since the City of Niagara Falls did not join in this motion, the court makes no judgment with regard to the liability of the city in this lawsuit.
Accordingly, this motion is dismissed.