BOYCE F. .MARTIN, Jr., Circuit Judge, with whom MERRITT, Chief Judge, and NATHANIEL R. JONES, Circuit Judge,
join, dissenting.
I dissent from the majority opinion because I believe qualified immunity, not absolute immunity, is the appropriate standard under Section 1983 for the Tennessee medical licensing board. Tennessee licensing board members who are appointed by the governor for renewable four-year terms and who sit in judgment of their competitors are not sufficiently independent arbiters to assure that there are not violations of constitutional rights.
42 U.S.C. § 1983 does not explicitly contain any absolute immunities. Some absolute immunities, well-established in the common law at the time of the passage of Section 1983, have been incorporated into Section 1983 upon the belief that Congress would have abrogated common-law immunities only by specific provisions. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). See also Ten-ney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (legislative immunity); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prose-cutorial immunity). One absolute immunity which has been incorporated into Section 1983 is judicial immunity. Pierson, 386 U.S. at 554-55, 87 S.Ct. at 1218. The question in this case is whether, under Section 1983, the judicial immunity described in Pierson covers the medical licensing board of Tennessee. In deciding this question, it must be emphasized that this court should not make its own freewheeling policy choice, but should instead look to Congress’ intent in Section 1983, guided by our common-law tradition. Malley v. Briggs, 475 *279 U.S. 335, 342, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). As the court stated in Tower v. Glover, 467 U.S. 914, 922-23, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984), “We do not have a license to establish immunities from [Section 1983] actions in the interests of what we judge to be sound public policy. It is for Congress to determine whether [Section 1983] litigation has become too burdensome to state or federal institutions and, if so, what remedial action is appropriate.”
As held in Cleavinger v. Saxner, 474 U.S. 193, 201-02, 106 S.Ct. 496, 500-01, 88 L.Ed.2d 507 (1985), six factors, among others, should be considered when deciding whether the judicial immunity implied in Section 1983 covers a specific judicial position: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from outside influences; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correeta-bility of error on appeal. Based on the factors listed above, especially the third factor, Congress could not have intended that medical licensing boards like the board in this case should be given absolute immunity.
In this case two factors tend toward a finding of absolute immunity: (1) medical licensing boards should be free from harassment or intimidation; and (2) hearings before the board are adversarial in nature. But the other four factors tend against interpreting Section 1983’s implied judicial immunity to include immunity for a medical licensing board like the licensing board in this case.
First, the medical licensing board in this case did not follow the procedures mandated by Tennessee’s Uniform Administrative Procedures-Act. The plaintiff has identified fourteen procedural errors by the licensing board, among which was the lack of an administrative judge or a hearing officer. The Tennessee Administrative Procedures Act requires that contested cases be heard before an administrative judge or hearing officer. Tenn.Code Ann. § 4-5-312(a) (1990). The purpose of the statute is to guarantee that due process will be afforded in contested cases by requiring that an administrative law judge or hearing officer conduct hearings. See Tenn.Code Ann. §§ 4-5-312(b), -301(a) (1990). Here the board argues they can neglect the protective requirement of a hearing officer and then argue that Tennessee’s statute contains sufficient procedural safeguards to ensure that unconstitutional conduct does not occur. As the majority noted, the court in Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978), held that a person is immune from suit under Section 1983 for “grave procedural errors” if he is a judge performing a judicial act. However, when reviewing whether procedural safeguards exist under a state statute that will protect against unconstitutional activities, we must look to whether those procedural safeguards are actually followed.
Second, the Tennessee Administrative Procedures Act does not state that precedent is to be followed by a licensing board in reaching its results. The defendants in this case have not shown that the medical licensing board follows precedent. Therefore, we cannot assume that the licensing board is bound by precedent when making its decisions.
Third, the Tennessee Administrative Procedures Act does not provide for adequate judicial review of its licensing board decisions. Under Tenn.Code Ann. § 4-5-322(g) (1990), judicial review of the medical licensing board’s proceedings “shall be confined to the record” unless “irregularities in procedure” are shown. Therefore, bias, conflict of interest, and prejudice cannot be examined by a reviewing court if they are not in the record made before the board.
Fourth, and most importantly, the medical licensing board is not sufficiently insulated from outside influences. In Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the court decided that federal administrative law judges who are sued for violating constitutional rights un *280 der Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), should be granted judicial immunity.[1] The court stressed that the federal administrative law judges were insulated from outside pressures. Id., 438 U.S. at 513, 98 S.Ct. at 2914. The court noted that the administrative law judges were free from outside influences because they could not have duties which were inconsistent with their duties as hearing examiners, could not be subject to the supervision of investigators or prosecutors, could not consult outside sources of information, were to be assigned based on rotation, and could only be removed for good cause as determined by the Civil Service Commission. Id. at 514, 98 S.Ct. at 2914. Unlike federal administrative law judges, the medical licensing board members in this case are not free from outside pressures. The medical licensing board members are political appointees who are appointed by the governor of Tennessee, not civil servants under a civil service commission. In addition, the members of the board do not serve for as long as they remain in good behavior, but may be removed upon the completion of their renewable terms. Moreover, the members of the board in this case are doctors who sit in judgment of their own competitors. Unlike the administrative law judges who do not compete with the litigants whom they judge, the members of the Tennessee medical board may gain benefits, as individuals, by revoking a doctor’s license. Because they are not sufficiently insulated from outside pressures, Congress could not have intended that the common-law immunity for judges under Section 1983 extends to cover a medical licensing board such as this one.
The qualified immunity standard under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), is sufficient to protect honest state officials while nonetheless providing redress for those aggrieved by violations of their constitutional rights. In Harlow, 457 U.S. at 818, 102 S.Ct. at 2738, the court held that one who is protected by qualified immunity cannot be found liable under Section 1983 if his conduct “does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Following Harlow, in rejecting arguments that the judicial immunity implied in Section 1983 should be expanded to cover prison hearing boards, the court stated that the Harlow standard ensured that non-meritorious claims would not proceed to trial while simultaneously ensuring that true victims of unconstitutional conduct would not be left without redress. Cleavinger v. Saxner, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). Similar reasoning is applicable here. As the court recently noted in Wyatt v. Cole, — U.S. —, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), “Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government’s ability to perform its traditional functions.”
Under the Harlow standard of qualified immunity and the summary judgment standard of Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), frivolous Section 1983 claims are easily disposed of under summary judgment. Generally, *281 following a suitable opportunity for discovery, all that would be necessary would be a motion and an accompanying affidavit. The minimal costs associated with eliminating a case on summary judgment must be secondary to the protections of Section 1983.
Stretching judicial immunity to cover these defendants goes beyond Congress’ intent. As Justice Douglas noted in dissent in Pierson v. Ray, 386 U.S. at 559, 87 S.Ct. at 1220, Section 1983 provides protection against “every person” who would infringe constitutional rights, not “every person except judges.” Although the statute should not be interpreted as starkly as Justice Douglas would have it interpreted, Justice Douglas’ concern remains apparent: a statute enacted by Congress to prohibit state officials from infringing constitutional rights is eviscerated if state officials with the power to infringe constitutional rights are exempt from liability. Congress could not have intended that Tennessee’s licensing board should be exempt from liability under Section 1983.
I would therefore affirm the district court’s refusal to dismiss the complaint under Rule 12(b)(6).

. The majority opinion cites Butz v. Economou, 438 U.S. 478, 496-500, 98 S.Ct. 2894, 2905-07, 57 L.Ed.2d 895 (1978), for the proposition that "... it would be wrong to distinguish between state officials and federal officials in deciding on immunity from liability for damages under 1983.” The court in Butz, 438 U.S. at 496, 98 S.Ct. at 2905, did say that immunity decisions under Section 1983 are "instructive” when deciding whether an immunity should exist under a Bivens action. The court in Butz, 438 U.S. at 500, 98 S.Ct. at 2907, did say “there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by Bivens than is accorded state officials when sued for the identical violation under 1983.” However, the court in Butz did not say that immunities under Section 1983 must be the same as immunities under Bivens. Court decisions under Section 1983 may be instructive for purposes of deciding whether to create an immunity under a Bivens action, but court decisions regarding immunity under Bivens are not instructive in determining the extent of immunities under Section 1983. In deciding whether an immunity exists under Section-1983, the court’s task is always to determine the intent of Congress. How prior courts have treated similar immunities under Bivens does not affect that task.