# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CP-00180-SCT

*JOHN M. TERRY, JR.*

*v.*

*OBY T. ROGERS, PLLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/2017 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | J. WYATT HAZARD |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN M. TERRY, JR. (PRO SE) |
| ATTORNEYS FOR APPELLEE: | J. WYATT HAZARD |
| | RICHARD BENJAMIN McMURTRAY |
| | MATTHEW WYATT WALTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/15/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., BEAM AND CHAMBERLIN, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     John Terry sued his former court-appointed attorney Oby Rogers in the Covington County Circuit Court, claiming fraud, legal malpractice, and violation of his civil rights under 42 U.S.C. § 1983. The trial court granted Rogers's motion for summary judgment on all claims and held that the Mississippi Tort Claims Act (MTCA) was applicable because Rogers's was an "employee" for the purposes of the MTCA. We affirm the trial court's order granting Rogers's motion for summary judgment.

## PROCEDURAL HISTORY

¶2. On December 3, 2013, Terry, proceeding *pro se*, filed a one-page civil complaint against Rogers claiming Rogers had actively worked against him while serving as Terry's court-appointed attorney by "willfully and corruptly falsely affirming in sworn documents to [Terry's] guilt to felony charges." Terry claimed, "Said affirmations are completely false and brought about by deceit and forgery[,]" and "Rogers breached his fiduciary responsibility to [Terry], thereby committing legal malpractice." Terry claimed he sat in the Covington County Jail from September 20, 2012, to October 31, 2012, "on no charges," while Rogers "should have been working to get him released." Terry claimed that Rogers instead tried to get Terry to "recant" his "actual court accepted, and adjudicated plea."

¶3. Shortly after providing deposition testimony in the matter, Terry filed an amended complaint on December 10, 2015. Terry alleged that Rogers was liable under § 1983 for becoming "an agent for the District Attorney's Office." Terry claimed Rogers "became complicit in an effort to get Terry to bend to the will of the prosecution by causing [Terry] to be falsely imprisoned until Terry relented and disavowed his court adjudicated [guilty] plea."

¶4. Terry stated in the amended complaint that Rogers's actions "were not that of negligent counsel but of a malicious character, who under the color of [law, while] providing Terry indigent counsel, was actually advocating the role of prosecutor."

¶5. In the amended complaint, Terry claimed that, on March 14, 2012, officers from the Covington County Sheriff's Department arrested him and his girlfriend at Terry's home. Officers had found seventeen marijuana plants, grow lights, and fertilizer in the home. Terry

2

was charged with possession of marijuana with intent to manufacture. Terry's girlfriend was also charged.[1]

¶6.     At a July 2012 hearing, the Covington County Circuit Court appointed Rogers to represent Terry. During the hearing, Terry's bond was reduced to $50,000. Terry never posted bond and remained in jail. Terry stated in his deposition that the bond initially was $155,000, "on different charges."

¶7.     According to Terry, Rogers's assistant, Stacy Shoemake visited Terry in the Covington County Jail on September 17, 2012. Shoemake presented Terry with a plea petition agreement "that had been negotiated between Mr. Terry and the District Attorney's Office." Shoemake told Terry to read the petition and to make sure that he understood what everything meant.

¶8.     Terry claims that after he reviewed the petition, he pointed out to Shoemake that the handwritten charges did not match his indictment. The plea petition simply read, "possession of 6.2 grams of marijuana," and it failed to include the language "with intent to manufacture," as set forth in the indictment. Terry claims that Shoemake told him to go ahead and sign the petition and assured him they would "fix" the language later.[2]

¶9.     Terry says he appeared with Rogers at the Simpson County Courthouse on September 20, 2012, for a plea-petition hearing. During the hearing, the trial court asked Terry if he

_____

[1] The record does not indicate what crime Terry's girlfriend was charged with.

[2] Shoemake stated in an affidavit that Terry is incorrect that the plea-petition form he signed failed to include the "with intent" language. Shoemake also stated that, had the language not been included or had it needed to be changed, she would have made the change then.

3

intended to plead guilty to "possession of 6.2 grams of marijuana w/intent to manufacture." Terry responded, "Yes."

¶10. According to Terry, Rogers interrupted at that point and said, "No, sir, I don't believe that is correct, Your Honor. I believe he is just pleading to possession of a controlled - - Schedule I substance." The judge then "inquired of the prosecution's position, to which the prosecutor asked the [c]ourt's indulgence for a moment."

¶11. At that point, the judge said to Rogers, "From your plea offer it looks like a straight possession." The prosecutor then spoke up and said, "We can do them straight possession."

¶12. According to Terry, the prosecutor said, "Your Honor, the State would make a motion ore tenus to amend the indictment to drop the intent portion of the indictment." The judge asked Terry if it was his intention to plead guilty to simple possession. Terry says he replied in the affirmative. The court accepted the amended plea agreement and Terry was convicted of "misdemeanor" possession.

¶13. Terry claims the judge "mistakenly failed to adjust the sentence to the pleading, and sentenced [Terry] to a term of three years in the [custody] of the Mississippi Department of Corrections, said sentence suspended, and defendant placed on three years supervised probation."

¶14. Terry says that after the September 20 hearing, all restraints were removed from him, and he was set up with a probation officer. Terry was then "asked by an Officer who escorted him to the courthouse if he needed a ride back to Covington County." Terry said yes, and he "rode back with two Officers of the Covington County Sheriff's Department."

4

¶15.   According to Terry, a few hours later, "the District Attorney's Office became dissatisfied with the plea agreement and encouraged Rogers to try to talk [Terry] into disavowing his actual court accepted and adjudicated plea, and [to] plead guilty to felony charges."

¶16.   Terry claims he was then summoned to Rogers's law office where he was "presented with a typed affidavit that he was encouraged to sign, disavowing his actual court accepted and adjudicated plea, and agree[ing] to amend the plea to 'possession of 6.2 grams of marijuana with intent.'" Terry refused and said that, "while it was initially his intention to plead guilty [to] 'possession w/intent, his intentions changed when the prosecution amended the indictment.'" According to Terry, he was "detained by a Covington County Sheriff's Officer" while standing in Rogers's office.

¶17.   Terry claims that the next day, on September 21, 2012, "while being held in Covington County Jail without charge," Rogers and Shoemake visited Terry at the jail. And "in what appears to have been an effort to please the District Attorney's Office, [they] tried to persuade Terry to sign an affidavit disavowing his actual court accepted and adjudicated plea, and instead plead guilty to felony charges." Rogers informed Terry that if Terry refused to sign the affidavit, the district attorney's office would prosecute Terry's girlfriend. Terry refused.

¶18.   Terry claims he told Rogers that "the prosecution made the mistake by amending the indictment and the [c]ourt should amend the sentence to correspond to the charges." As Terry "understood it," no warrant had been issued for his arrest, "and all charges related to

5

the 6.2 grams of marijuana had been duly adjudicated"; therefore, Terry was being held without charge and he needed Rogers's assistance.

¶19.   Terry says Rogers became irate and stormed out of the Covington County Jail after Terry's second refusal to sign a sworn affidavit to disavow the court-adjudicated plea.

¶20.   Terry claims he sat in the Covington County Jail "from September 20, 2012, to October 31, 2012, on no charges."  On October 31, 2012, Terry was taken to the Smith County Courthouse where he met with Rogers.  There, Rogers informed Terry that he was going to request that the court allow him to withdraw as Terry's counsel.  According to Terry, Rogers told him that a conflict of interest had arisen because Rogers was also representing Terry's girlfriend.

¶21.   Terry claims that the judge before whom he appeared on October 31 was the same judge who had presided over Terry's plea-petition hearing on September 20.  Terry says the October 31 hearing was the first time the judge became aware of the "unlawful sentence" he had "mistakenly handed down."  The judge "was also made aware at that time that Terry had spent the last forty days in the Covington County Jail after having his plea adjudicated in his courtroom."  Terry says he was "freed on October 31, 2012, with instruction to be present at the Covington County Courthouse on January 25, 2013."

¶22.   According to Terry's complaint, "unbeknownst to [Terry at the time,] the day before Rogers asked to be recused from his duties[,] 'under color of the law,' [Rogers] had filed a Plea Petition Agreement in the Covington County Courthouse, supposedly on behalf of Terry."

6

¶23.   Terry claims he became aware of the plea petition while at Rogers's law office on December 4, 2012.   Terry says Rogers had invited him to his office to meet Regnal Blackledge, the attorney Rogers had personally recommended to him at the October 31 hearing to take Rogers's place as Terry's counsel.

¶24.   In March 2016, Rogers filed a motion for summary judgment claiming that Terry's claims were barred by the applicable statute of limitations and the "*Heck* doctrine" espoused in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).   Rogers further asserted that the State had a right to incarcerate Terry between the time of the plea hearing and the time Terry was sentenced; that Terry's claims are barred under judicial immunity as set forth in the MTCA; and that Terry had failed to designate an expert to opine that Rogers had breached any duty owed to Terry.

¶25.   The trial court granted summary judgment in favor of Rogers, finding that Rogers, who had been appointed to represent Terry as a public defender, was an employee of Covington County.   Accordingly, the trial court held that the MTCA applied.   The trial court found, however, that Terry had failed to comply with the notice requirements of Mississippi Code Section 11-46-11(Rev. 2012), *invalidated on other grounds by University of Mississippi Medical Center v. Robinson*, 876 So. 2d 337 (Miss. 2004).   As a result, the trial court found that Terry's claims were barred by the MTCA's one-year statute of limitations.

¶26.   The trial court found also that Terry's § 1983 claim failed as a matter of law.   The trial court noted that the *Heck* Court had held the following:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would

7

render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 487. The trial court found that Terry had failed to show that his conviction and sentence had been reversed or otherwise expunged or invalidated.

¶27.   The trial court further found that under ***Pope County v. Dodson***, 454 U.S. 312, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981), Rogers could not be considered a state actor for purposes of § 1983. Terry stipulated through "Responses to Itemization of Undisputed Facts" that Rogers was acting in the course and scope of his employment as county public defender at the time of the alleged acts about which Terry complains. The trial court noted that, in ***Dodson***, the United States Supreme Court had found that "a public defender does not act under color of the state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." ***Dodson***, 454 U.S. at 325.

¶28.   Lastly, the trial court observed that Terry purported to assert a claim of fraud. Terry claimed that the plea agreement which he signed was different than the plea agreement that was filed. Terry claims Rogers's assistant switched certain pages of the plea agreement that Terry actually signed. The trial court noted that a plaintiff must prove fraud by clear and convincing evidence and found that, based on the record, Terry was unable to do so.

8

¶29.   Terry filed a notice of appeal and, at that point, sought to designate the record to include as a partial transcript of the September 20, 2012, plea proceeding and a full transcript of the October 31, 2012, proceeding.

¶30.   Rogers filed a motion objecting to Terry's designation of the record to the extent it sought to include these documents.  Rogers claimed that, prior to Terry's designation of the record, the transcripts had not been part of the record.  The trial court granted Rogers's motion.

## DISCUSSION

¶31.   This Court reviews a trial court's grant or denial of a motion for summary judgment under a de novo standard.  ***Copiah Cty. v. Oliver***, 51 So. 3d 205, 207 (Miss. 2011).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Miss. R. Civ. P. 56(c).

### Fraud

¶32.   We find no triable issue with regard to Terry's fraud claim.  As the trial court found, Terry is unable to prove fraud.

¶33.   Fraud must be proven by clear and convincing evidence.  ***Martin v. Winfield***, 455 So. 2d 762, 764 (Miss. 1984) ("Proving fraud is difficult; as it ought to be. Clear and convincing evidence is required.").

The elements of fraud are

(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) [the speaker's] intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearers's ignorance of its falsity, (7) his [or her] reliance on its truth, (8) his [or her] right to rely thereon, and (9) [] consequent and proximate injury.

*Id.* (citations omitted).

¶34.   Accepting Terry's version of events as true, Terry cannot demonstrate that what the plea petition represents is false.  Terry's admitted that, he intended to sign a plea petition that corresponded to what had been charged in his indictment: possession of marijuana with intent to manufacture. Terry knowingly and willingly signed the plea petition with the understanding that it would be corrected to include the language "with intent."  Therefore, the plea petition represents the truth of the matter.

¶35.   Also, the plea petition and its filing are immaterial to the harm Terry claims he suffered by the alleged unlawful confinement from September 20 to October 31.  The plea petition and its filing did not bring about Terry's confinement.  As Terry acknowledges, the petition was filed on October 30, the day before the October 31 hearing, at which point Terry was released from jail.

¶36.   Alternatively, Terry claims the information contained in the plea petition is harmful and prejudicial to him because it "now resides in the Covington County Courthouse, open to public scrutiny."

¶37.   We fail to see how the presence of Terry's plea petition in the Covington County Courthouse is harmful since his plea hearing was also open "to public scrutiny" and since Terry admittedly told the judge at that hearing that he intended to plea guilty to possession

10

of marijuana with intent to manufacture. Accordingly, based upon his own account, Terry cannot demonstrate any proximate harm that resulted from the plea petition and its filing.

¶38.     For these reasons, we find the trial court was correct in granting summary judgment on Terry's fraud claim.

### Section 1983 Claim

¶39.     As the trial court noted, in order to recover damages for an unconstitutional conviction or imprisonment, a § 1983 plaintiff must prove that the conviction or sentence has been either reversed, expunged, declared invalid, or called into question by issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 487.

¶40.     In *Heck*, the plaintiff, a convicted and incarcerated felon, had filed a § 1983 claim against prosecutors and law enforcement officers involved in his case, claiming they had deliberately destroyed exculpatory evidence in order to convict him. *Id.* at 479. The Supreme Court analogized the plaintiff's § 1983 claim to a common-law tort claim for malicious prosecution, concluding that a necessary element for such a claim is that legal proceedings have been resolved in favor of the accused. *Id.* at 484. The *Heck* Court referred to this element as the "favorable[-]termination requirement." *Id.* n.4.

¶41.     *Heck* reasoned that, without a such requirement, § 1983 litigation would allow a collateral attack upon the legality of a conviction by the plaintiff's seeking money damages through a civil suit rather than proceeding through the proper channel of habeas corpus proceedings. *Id.* at 484-85. If the plaintiff were successful in the civil suit, the judicial system would be faced with conflicting and irreconcilable outcomes arising out of the same

11

event.  *Id.* at 484.  Thus, *Heck* held that a claim for damages bearing a relationship to a conviction or sentence that has not been invalidated is not cognizable under § 1983.  *Id.* at 487.

¶42.    *Heck* then instructed,

> [W]hen a state prisoner seeks damages in a [§] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.*

¶43.    Notably, the circumstances in *Heck* are different from this case.  There, the plaintiff was still incarcerated when he filed his filed his § 1983 claim.  Here, Terry was no longer incarcerated when he filed his § 1983 claim.  But *Heck* considered this circumstance as well, stating, "We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."  *Id.* at 490 n.10.

¶44.    As instructed by *Heck*, if the trial court had properly found that *Heck*'s favorable-termination requirement had not been met in this instance, then the trial court should have dismissed Terry's § 1983 claim without prejudice instead of proceeding to address it on the merits under *Dodson*.  *See Heck*, 512 U.S. at 479, 487.

¶45.    But we do not find that the *Heck* bar applies here.  Based upon our review of the record, the parties do not dispute that Terry's three-year felony sentence for possession of

12

marijuana was amended to correspond with Terry's guilty plea to simple possession and that Terry was then ordered to pay a $250 fine. *See* Miss. Code Ann. § 41-29-139(c)(2)(A) (Rev. 2009). This constitutes a favorable termination under ***Heck*** and thus allows review of the merits of Terry's § 1983 claim under ***Dodson***. Accordingly, the trial court did not err in addressing the merits of Terry's § 1983 claim.

¶46. As the trial court noted, a public defender does not act under color of state law in the normal course of his or her representation of a criminal defendant, even if counsel is liable for malpractice under state law. ***Dodson***, 454 U.S. at 324-25. But the Supreme Court has also held that public defenders are not immune from liability under § 1983 for "intentional misconduct, 'under color of' state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights." ***Tower v. Glover***, 467 U.S. 914, 923, 104 S. Ct. 2820, 81 L. Ed. 2d 758 (1984); *see also* ***Dennis v. Sparks***, 449 U.S. 24, 27-28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980) (holding that an otherwise private person acts under color of state law when engaged in a conspiracy with state officials to deprive another of federal rights).

¶47. Here, Terry contends Rogers engaged in intentional conduct in violation of § 1983 by actively working against him by "willfully" affirming a false, sworn document, i.e., Terry's plea petition. But as discussed above, Terry's plea petition was not false.

¶48. Again, Terry admits that he intended to plead guilty to possession "with intent." Terry signed a plea petition with the understanding the document would be corrected to so reflect, and he subsequently told the trial court that he intended to plead guilty to possession with

intent. The plea petition represents the truth of the matter, and Terry cannot demonstrate that the petition's filing constituted intentional misconduct designed to deprive Terry of his constitutional rights.

¶49. Accordingly, we find the trial court correctly denied Terry's § 1983 claim under *Dodson*.

### Legal-Malpractice Claim

¶50. While Terry's complaint alleged legal malpractice against Rogers, Terry expressly disavowed any such claim later in the proceedings. As the trial court found, Terry stated in his response to Rogers's motion for summary judgment that he was proceeding solely under § 1983. And Terry confirmed at the summary judgment hearing that he was pursuing only the § 1983 claim.

¶51. Accordingly, we find that Terry has abandoned any legal-malpractice claim articulated in his pleadings. Thus, we need not reach the trial court's findings about the MTCA.

¶52. Lastly, we are not unsympathetic to Terry's position as a *pro se* litigant who unadvisedly placed all his eggs in the wrong legal basket. Nonetheless, *pro se* litigants in civil cases are "held to the same rules of procedure and substantive law as represented parties." *Ivy v. Merchant*, 666 So. 2d 445, 449 (Miss. 1995).

¶53. For these reasons, we must affirm the trial court's grant of summary judgment in favor of Rogers.

### CONCLUSION

¶54. The circuit court's order granting summary judgment in favor of Rogers is affirmed.

¶55.	**AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR.**