**Ralph GAUSVIK, Plaintiff,**

v.

**Robert Ricardo PEREZ, individually, and in his official capacity; et al., Defendants.**

**No. CS–01–071–AAM.**

United States District Court, E.D. Washington.

July 13, 2002.

John S. Stocks, Van Siclen Stocks &
Firkins, Auburn, WA, Robert Craig Van
Siclen, Tyler K. Firkins, Van Siclen Stocks
& Firkins, Auburn, WA, for Ralph Gaus-
vik.

Patrick G. McMahon, Carlson McMahon
& Sealby PLLC, Wenatchee, WA, for Rob-
ert Ricardo Perez.

Patrick G. McMahon, Carlson McMahon
& Sealby PLLC, Wenatchee, WA, for Ken-
neth J. Badgley, Earl Tilley, City of Wen-
atchee, Wenatchee Municipal Police Dept.

Stanley Allen Bastian, Jeffers Danielson
Sonn & Aylward PS, Wenatchee, WA, for
Chelan County.

Joel E. Wright, Lee Smart Cook Martin
& Patterson PS, Seattle, WA, for Barker
& Howard PS Inc., Jeffrey Barker, Keith
Howard.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*

MCDONALD, Senior District Judge.

**BEFORE THE COURT** is the defen-
dant Chelan County's *Motion for Summary
Judgment* (Ct.Rec.53) joined in by defen-
dants Barker & Howard, P.S., Inc., Jeffrey
Barker and Keith Howard (Ct.Rec.68).[1]

---

1.  Plaintiff's Motion to File Overlength Brief in response to the summary judgment motion (Ct.Rec.84) is **GRANTED**.

Also before the court is the plaintiff's Motion to Continue Chelan County's Motion for Summary Judgment (Ct.Rec.77) and defendants' Motion to Strike Supplemental Declaration of Tyler K. Firkins (Ct. Rec.95).

## I. BACKGROUND

Defendant Robert Perez of the City of Wenatchee Police Department was the lead investigator in what became known as the "Wenatchee Sex Ring" cases. His investigation led to the arrest and prosecution of plaintiff Ralph Gausvik. Gausvik was represented by Jeffrey Barker who was acting as a public defender and paid by Chelan County pursuant to the terms of a public defense contract awarded to the firm of Barker & Howard. On November 2, 1995, a Chelan County jury found Gausvik guilty of six counts of rape of a child and child molestation. In January 1998, the Washington Court of Appeals reversed Gausvik's convictions on two of the counts, but affirmed on the remaining counts. On November 18, 1998, Gausvik was resentenced to a term of imprisonment of 260 months.

In June 2000, pursuant to a personal restraint petition filed by Gausvik, the Washington Court of Appeals remanded the matter to the Chelan County Superior Court for a reference hearing to determine the reliability of the victims' accusations. The matter was specifically remanded to Honorable Wallace Friel, a Whitman County Superior Court Judge. The State thereafter voluntarily dismissed all of the charges against Gausvik because Judge Friel had made findings in previous reference hearings in other cases that Perez had improperly interviewed alleged abuse victims. Therefore, the State believed it could not prevail in Gausvik's case.

After the charges against him were dismissed, Gausvik commenced the captioned suit. This suit alleges violations of his federal constitutional rights under 42 U.S.C. § 1983. It also alleges various common law tort causes of action. Named as defendants are: Robert Perez, Kenneth J. Badgley, Chief of the Wenatchee Police Department during the relevant time, Earl Tilley, Mayor of the City of Wenatchee and Director of the Public Safety Committee at the relevant time, City of Wenatchee, Wenatchee Municipal Police Department, Chelan County, Barker & Howard, P.S., Inc., and Jeffrey Barker and Keith Howard, the principals of Barker & Howard.

Chelan County now moves for summary judgment and the Barker & Howard defendants join in that motion.

## II. PRELIMINARIES

At the same time he filed his response to the summary judgment motion on June 10, plaintiff filed a motion to continue defendants' summary judgment motion on the basis that plaintiff intended to depose Chelan County Prosecutor Gary Riesen on May 21, but was informed shortly before his deposition that Riesen wanted independent counsel. Independent counsel was not available for a deposition on May 21. In his motion to continue, plaintiff asserted independent counsel had not cooperated in rescheduling Riesen's deposition. Plaintiff said he had also been unable to depose Deputy Chelan County Prosecutor Roy Fore. Plaintiff requested a brief continuance to depose these witnesses or, alternatively, an opportunity to supplement the record with excerpts of their depositions. Plaintiff also sought leave to supplement the record with excerpts from the depositions of Perez and James Jantzen, M.D., which had already been taken, but not yet transcribed.

Chelan County opposed the motion to continue. It observed that this court previously granted plaintiff a continuance of the motion for summary judgment. That

continuance was granted to enable plaintiff to take depositions of certain individuals (Barker and a former Chelan County Commissioner) to support plaintiff's claim that Chelan County had a deliberately indifferent policy of providing ineffective assistance of counsel to indigent defendants. Chelan County correctly observed that plaintiff's prior motion made no mention of the need to depose either Riesen or Fore.

On June 19, after Chelan County had already filed its summary judgment reply on June 17, plaintiff's counsel filed a supplemental declaration to which is attached excerpts from the depositions of Riesen, Fore, Perez and Jantzen. In that declaration, counsel alleges other inappropriate discovery practices by defendants (i.e., just receiving additional discovery materials from Barker; suggesting that Riesen and Fore were deliberately not made available to him for deposition purposes on May 21; discovery responses recently received from defendants City of Wenatchee and Perez objecting to nearly every interrogatory and request for production).

On June 21, Chelan County filed a Motion to Strike the Supplemental Declaration of Tyler K. Firkins. Chelan County asserts the supplemental declaration is untimely since it was filed after both plaintiff's response to the summary judgment motion and Chelan County's reply thereto. Chelan County also objects to the deposition of Dr. Jantzen being considered by the court since that deposition was taken in a different case in which Chelan County is not a party (*Gausvik v. Abbey et al.*, in Thurston County Superior Court), and Chelan County did not receive notice of the deposition and was not represented at

the same. Chelan County also complains that it has not been provided with a complete copy of Jantzen's deposition transcript and therefore, cannot effectively respond to his deposition. The Barker & Howard defendants object to the use of Jantzen's deposition on many of the same grounds.

Plaintiff's counsel asserts that all of the depositions at issue were taken before plaintiff's summary judgment response was due on June 10 (Perez Depo. on May 21; Jantzen Depo. on May 23; Riesen Depo. on June 6 and Roy Fore Depo. on June 6).[2] According to plaintiff's counsel, "the court reporter was swamped trying to transcribe the depositions in a timely fashion, which caused further delays," and that as soon as counsel obtained the transcripts, he attached them to his supplemental declaration and filed them with the court. Plaintiff's counsel asserts that all defendants' counsel were notified of the deposition of Jantzen and that several asked to be present and plaintiff's counsel did not object. Plaintiff's counsel says he also did not object to the release of the transcript to defendants' counsel.

It is difficult for this court to determine how much plaintiff's counsel is responsible for his predicament versus how much defendants' counsel may have contributed to it. In determining the summary judgment motion, the court has reviewed and considered the materials contained in the supplemental declaration. Because the court is granting summary judgment to Chelan County and the Barker & Howard defendants, they assuredly are not prejudiced by this court's consideration of the supplemental declaration.[3]

**2.** The deposition transcripts of Riesen and Fore, however, indicate those depositions were taken on June 11. .

**3.** With regard to Dr. Jantzen, the court is unaware of any rule prohibiting use of deposi-

tion testimony originating from a different case. Moreover, plaintiff's counsel states he gave all of defendants' counsel notice of the deposition.

Defendants' Motion to Strike Supplemental Declaration (Ct.Rec.95) is **DENIED**. Plaintiff's Motion to Continue Chelan County's Motion for Summary Judgment (Ct.Rec.77) is **DISMISSED** as moot.

## III. DISCUSSION

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). Under Fed. R.Civ.P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. Municipal Liability under 42 U.S.C. § 1983

Plaintiff's First Amended Complaint includes a "Fifth Cause of Action" which alleges:

Defendants Chelan County, and through its agents, Barker & Howard, PS, Inc., and Jeffrey Barker and Keith Howard, conspired to violate, and did violate, plaintiff's statutory and common law civil rights, in violation of 42 U.S.C. § 1983, and 42 U.S.C. § 1985, when Chelan County, by and through its agents, including policy making agents, failed to disclose material exculpatory evidence that the County was aware of during the prosecution of the plaintiff, including the fact that the Everett children recanted allegations of abuse in the presence of a Chelan County Prosecutor, who failed to disclose such evidence, and which occurred at or near the time of the plaintiff's prosecution by defendants. Chelan County is further liable when it set up and maintained a policy and practice of providing ineffective assistance of counsel to low income and disadvantaged individuals wrongly accused of a crime, and thereafter condoning negligent and ineffective assistance of counsel by the law firm, its agents and employees contracted to provide legal services to indigent individuals such as the plaintiff. Further, state law requires that the defendant Chelan County adopt standards for providing public defense services. During the period of time at issue herein, the defendant Chelan County had no such standards and failed to monitor the

conduct of defendant Barker who was the holder of the contract to provide public defense services. As a result, the Defendant Chelan County enabled Defendant Barker & Howard, PS, Inc., Jeffrey Barker, and Keith Howard to provide insufficient services. Thus, Chelan County violated Plaintiff Gausvik's right to counsel pursuant to the Fifth Amendment of the Constitution of the United States.

(Paragraph 9.2 of First Amended Complaint, p. 31).

42 U.S.C. § 1983 provides a mechanism for seeking redress for an alleged deprivation of an individual's federal constitutional and statutory rights by persons acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).[4]

■ A municipality or governmental entity cannot be found liable under § 1983 on a *respondeat superior* theory. Such liability can be imposed only for injuries inflicted pursuant to an official governmental policy or custom. *Gobel v. Maricopa County,* 867 F.2d 1201, 1206 (9th Cir.1989), citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The official policy requirement is intended to distinguish acts of the municipality from acts of employees of the municipality so that municipal liability is limited to actions for which the municipality is actually responsible. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

■ Governmental liability can be imposed when conduct reflects "practices of . . . officials permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. In "custom" cases, liability is attributed through a policy maker's actual or constructive knowledge of and acquiescence in the unconstitutional custom or practice." *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 511 (7th Cir.1993). Acts of omission, as well as commission, can serve as the basis for finding an unconstitutional policy or custom. *Oviatt ex rel. Waugh v. Pearce,* 954 F.2d 1470, 1477 (9th Cir.1992).

■ A municipality can also be held liable under § 1983 for failure to train, supervise or discipline its employees. However, "the inadequacy of training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom [officers] come in contact." *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ Deliberate indifference may be established by demonstrating a failure to train officials in a specific area where there is an obvious need for training in order to avoid violations of citizens' constitutional rights. Secondly, a municipality may be held responsible where a pattern of unconstitutional conduct is so pervasive as to imply actual or constructive knowledge of the conduct by the policy makers,

---

4. 42 U.S.C. § 1985 provides for recovery for a conspiracy to deprive an individual of federal civil rights.

whose deliberate indifference to the unconstitutional practice is evidenced by failure to correct the situation when the need for the training becomes obvious. *Id.* at 396–97, 109 S.Ct. 1197.

■ The deliberate indifference standard pertains to what is necessary to establish that municipal policy is the "moving force" behind a constitutional violation. *Id.* at 388 n. 8, 109 S.Ct. 1197 A plaintiff must identify a particular deficiency in the training program and prove the deficiency was the cause of the constitutional injury. It is not enough to establish that a particular officer was inadequately trained, or that there was a negligent administration of an otherwise adequate program, or that the conduct resulting in the injury could have been avoided by more or better training. *Id.* at 390–91, 109 S.Ct. 1197.

### 1. Prosecutorial Misconduct

■ Plaintiff contends his constitutional rights were violated when the Chelan County prosecutor's office failed to disclose material and exculpatory evidence and made false statements in support of an affirmation of probable cause against him. Plaintiff asserts the failure to abide by these requirements was the result of "either a failure to train prosecutor's office personnel—resulting in a prosecutor's office staffed with personnel ignorant of constitutional requirements- or the failure to monitor and supervise prosecutor's office

personnel maintaining a prosecutor's office in which repeated intentional violations of constitutional requirements are ignored, if not condoned." [5]

Plaintiff alleges the prosecutor failed to disclose to plaintiff during his criminal case that the method used "to extract the first accusation" against him was a "tour of homes" in which a minor, Donna Everett, a foster child of defendant Perez, was driven around Wenatchee and coerced into pointing to places where she had allegedly been raped and molested. Plaintiff alleges the prosecutor never disclosed to plaintiff that Donna Everett had a history of mental instability and had earlier made false accusations of abuse against two men. Plaintiff alleges the prosecutor failed to disclose that before making her accusations against plaintiff, Donna Everett had been interviewed several times by Perez, his supervisor Sgt. Pippin, and CPS (Child Protective Services) worker Kate Carrow and denied ever being sexually abused by anyone. Plaintiff alleges the prosecutor failed to disclose the improper interview methods used to coerce allegations of sexual abuse from Donna Everett and Troy Garass, the developmentally disabled child of the plaintiff.[6]

According to plaintiff, defendant Perez presented an affidavit of probable cause on July 10, 1995 which falsely stated that plaintiff had been identified by at least

---

5. Prosecutors are absolutely immune from liability under § 1983 for initiating and presenting the State's case insofar as that conduct is intimately associated with the judicial phases of the criminal process. *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). On the other hand, municipalities do not enjoy immunity from suit either absolute or qualified under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Hence, the fact the individual prosecutors involved in this case may be enti-

tled to prosecutorial immunity for allegedly failing to disclose exculpatory evidence and including false information in an affidavit of probable cause does not confer derivative prosecutorial immunity on Chelan County.

6. Plaintiff was never charged with raping or molesting Donna Everett. He was charged with raping and molesting his own children, Troy Garass, Travis Garass, and Delilah Garass, based on statements the children made to Detective Perez. The mother of the children is Barbara Garass.

eight children as a person who had sexually abused them.[7] Plaintiff says that as of that date, only two children had accused him of abuse: Donna Everett and Troy Garass.[8] Plaintiff alleges Chelan County Prosecutor Gary Riesen and Deputy Prosecutor Fore knew Perez' claim was false because they had reviewed all of his police reports and yet they failed to disclose this to plaintiff's defense counsel.

According to plaintiff, Fore filed another affidavit of probable cause on August 10, 1995 in which he still did not disclose that Perez' affidavit contained a false statement about eight children alleging abuse by plaintiff. Furthermore, plaintiff alleges Fore "refused" to disclose in his affidavit that: 1) Troy Garass was mentally deficient and it was only several hours of improper and coercive methods of interrogation that resulted in an accusation against plaintiff; 2) All of the Garass children at one time denied any abuse by their parents or anyone else; 3) The basis for the original contact with plaintiff was a witness the prosecutors knew was unreliable Donna Everett; 4) Every accusation against plaintiff was obtained through techniques that eventually forced the Garass children to accuse their father; and 5) Deputy Prosecutor Fore expressly misled the court by indicating that Perez' interview with Troy Garass on June 5, 1995 was the first contact with the Gausvik family.

### a. Need for Training

In *Walker v. City of New York*, 974 F.2d 293 (2nd Cir.1992), the plaintiff brought a § 1983 action in which he alleged the District Attorney's (DA) office's lack of training and supervision of Assistant District Attorneys (ADAs) led to a failure to disclose exculpatory evidence and the use of perjured evidence which resulted in plaintiff being wrongfully convicted and imprisoned in 1971. The district court had determined the prosecutor's obligation under *Brady*[9] to disclose exculpatory evidence was so obvious as to require no training. The Second Circuit disagreed:

Reading Walker's complaint in a light most favorable to Walker, we conclude that a complete failure by the DA in 1971 to train ADAs on fulfilling *Brady* obligations could constitute deliberate indifference sufficient to give rise to a § 1983 municipal liability. First, the district attorney knows to a moral certainty that ADAs will acquire *Brady* material. Second, contrary to the district court, we do not think that in 1971, just seven years after *Brady* was decided, that the *Brady* standard was so obvious or easy to apply as to require, as a matter of law, no training or supervision. Indeed, the evidence withheld in this case, although clearly *Brady* material, was not the sort that one would obviously turn over, absent some knowledge of *Brady*. That is, there might have been no need in 1971 to train ADAs to disclose direct evidence that the accused was elsewhere at the time of the crime. But it might not have been obvious in 1971 that ADAs should turn over all the information of the sort at issue here

---

7. Plaintiff was arrested based on Perez' affidavit of probable cause and, according to plaintiff, held in custody based on this affidavit until August 10, 1995.

8. Based on Perez' affidavit, the State, on July 12, 1995, filed an information charging plaintiff with one count of first degree rape of a child and one count of first degree child molestation of his son Troy. This information was eventually amended to include charges involving plaintiff's other children, Travis and Delilah. A "Fourth Amended Information" dated November 1, 1995 consisted of the six counts on which plaintiff was eventually tried and convicted.

9. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

evidence impeaching the accusing witness or revealing a lineup misidentification but not directly establishing the innocence of the accused. Because the proper course of conduct was not at all obvious in 1971 absent some training in the intricacies of *Brady*, a jury could find that the complete failure to train or supervise alleged here would likely result in ADAs making the wrong choices about turning over this kind of *Brady* material. We express no view as to whether such a jury finding would be supportable in other time periods or with respect to other kinds of exculpatory evidence. Finally, withholding *Brady* material will virtually always lead to a substantial violation of constitutional rights.

*Id.* at 300.

■ As is apparent, the *Walker* court set forth three requirements to be met before a municipality's failure to train or supervise constitutes deliberate indifference to constitutional rights. First, the policymaker must know to a moral certainty that his/her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the employee will frequently cause the deprivation of constitutional rights. *Id.* at 297–98. Where all three elements are established, it can be said with confidence that the policymaker should have known that inadequate training or supervision was "so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Id.* at 298, quoting *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197.

■ In the case at bar, if there was a failure by the prosecution to disclose certain evidence that was exculpatory and the prosecution presented an affidavit of probable cause it knew contained a false statement, the question is how training would have avoided the constitutional violation. Plaintiff essentially asserts the mere fact there was a failure to disclose exculpatory evidence and the prosecution knew Perez' probable cause affidavit contained a false statement is proof itself there was a failure to train. That, however, is not enough to impose liability on Chelan County. Plaintiff offers no evidence about the particular training received by the prosecutors and how it was purportedly deficient. Chelan County Prosecutor Riesen testified at his deposition about the training he received and the training his deputies receive (Riesen Depo. at pp. 4–7; Ex. 79 to Declaration of Tyler K. Firkins). Deputy Prosecutor Fore testified about the training he has received, including some specifically geared towards child sex abuse cases (Fore Depo. at pp. 4–7; 13–15; Ex. 78 to Declaration of Tyler K. Firkins). See *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197. ("adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable").

Training or no training, a prosecutor should recognize the inclusion of a false statement in an affidavit of probable cause is problematic. It must be established that a failure to train or supervise will result in an officer-or in this case, a prosecutor making the wrong decision. "Where the proper response- to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by ... policymakers to the

need to train or supervise." *Walker,* 974 F.2d at 299–300.

In *Walker,* the court found, in reading the plaintiff's complaint in a most favorable light on a Fed.R.Civ.P. 12(b)(6) motion to dismiss, that a "**complete** failure by the DA in 1971 to train ADAs on fulfilling *Brady* obligations could constitute deliberate indifference sufficient to give rise to § 1983 municipal liability." (Emphasis added). In the case before this court, the evidence simply does not support that there was a "complete" failure to train prosecutors about their obligations to disclose exculpatory evidence.

In *Walker,* the court found that "[b]ecause the proper course of conduct was not at all obvious in **1971** absent some training in the intricacies of *Brady,* a jury could find that the **complete** failure to train or supervise alleged here would likely result in the ADAs making the wrong choices . . . ." (Emphasis added). The court, however, expressly added that "[w]e express no view as to whether such a jury finding would be supportable in other time periods or with respect to other kinds of exculpatory evidence." Plaintiff was prosecuted in 1995, over thirty years after *Brady* was decided. Plaintiff does not explain what nuances of *Brady* could have possibly escaped the prosecution that training could have otherwise provided so as to avoid the alleged *Brady* violations which occurred in plaintiff's criminal case. Indeed, plaintiff argues the *Brady* violations were obvious. If they were obvious, no amount of training would have kept them from occurring.

#### b. Pattern of Unconstitutional Conduct

■ A municipality may be held responsible where a pattern of unconstitutional conduct is so pervasive as to imply actual or constructive knowledge of the conduct by the policy makers, whose deliberate indifference to the unconstitutional prac-

tice is evidenced by failure to correct the situation when the need for the training becomes obvious. Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on a municipality. *Merritt v. County of Los Angeles,* 875 F.2d 765, 770 (9th Cir.1989). In *Merritt,* the plaintiff's claim of inadequate training with respect to the use of excessive force failed where the only evidence the plaintiff presented was the manner in which he himself was arrested.

■ It appears plaintiff considers Chelan County Prosecutor Riesen to be the "policymaker" and that would be reasonable. In Washington, the elected county prosecuting attorney is the "principal," the person who has controlling authority or is in the leading position within the prosecutor's office. By definition, the prosecuting attorney is the one in whom policymaking authority inheres. Therefore, the question is whether plaintiff has presented sufficient evidence to raise an issue of material fact that Riesen knew or should have known of a pattern of unconstitutional conduct and failed to correct it.

Riesen participated in the prosecution of plaintiff. (Depo. at pp. 73–74). At his deposition, Riesen was asked about the statement in Perez' affidavit of probable cause that plaintiff had been identified by eight children as the perpetrator of sexual abuse. Riesen's response was that plaintiff was only charged with abuse of three victims, those being his three children. Riesen said he was not concerned that Perez' statement was inaccurate. He said he was not sure what Perez meant because the police report was not attached to the affidavit of probable cause. (*Id.* at pp. 86–87). Asked whether it would have been important to inform the court in an affidavit of probable cause that Troy Garass was developmentally delayed, Riesen's response was that he did not recall having

any specific information at that time about the child's level of functioning. (*Id.* at p. 98). Riesen added that one could not assume that because somebody has a limitation that they are being untruthful. (*Id.* at p. 99). Riesen testified that his office would have provided defense counsel with any reports about the victims which, in plaintiff's case, were his three children Delilah, Travis and Troy. According to Riesen, he would not have provided "everything" about Donna Everett because "it wasn't relevant to the case at that point" because she "never testified" and "[i]f the Gausvik children hadn't made a disclosure here, there wouldn't have been any case filed." (*Id.* at pp. 113–14).[10]

Riesen acknowledged becoming aware at some point that Detective Perez was throwing away his handwritten notes of his interviews with alleged child sex abuse victims. He and Deputy Prosecutor Fore discussed with Perez that it would be "easier" if Perez kept his notes because that eliminates an argument about whether the police report generated is consistent with the officer's notes. Riesen asserted many officers do not keep their notes and will claim the notes they took mirror what is in the final report, but defense counsel can argue that issue on cross-examination of the officer. Riesen said that because he does not do investigations, he would not have investigated whether Perez was typing down exactly what he had written in his notes before he threw them away. (*Id.* at pp. 31–37).

Asked whether he believed a "child victim's history of nondisclosure may constitute exculpatory evidence," Riesen responded that it would "depend on the circumstances:"

> If a child didn't say anything about anybody in particular and they weren't asked about that person, then it may have absolutely no significance. If they had been asked about a particular person, on that particular case ... then that information would probably be more relevant to the case. Whether it would be exculpatory or not, specifically, I'm not sure, but it would certainly be relevant to the case.

(*Id.* at 73). Asked about the situation where a child denies any sexual abuse at all, Riesen testified that whether this was exculpatory evidence "would depend on the circumstances, the length of time that was involved between that statement and whatever else you were doing, what the circumstances were, what the question was." (*Id.*)

At his deposition, Deputy Prosecutor Fore acknowledged that Travis and Delilah Garass would have been important witnesses in their father's case even if they had not alleged sexual abuse by their parents. (Fore Depo. at 66). Fore was then asked whether the fact Travis and Delilah had denied sexual abuse by their parents in May 30, 1995 interviews would have been important information for the court to consider in determining probable cause.[11] Fore's response:

> No. I'm not trying the case in the affidavit of probable cause. I filed charges against Mr. Gausvik for two counts of sexual abuse involving Troy. And I was showing that there was probable cause

10. Riesen reiterates in his affidavit that Donna Everett did not testify at plaintiff's trial.

11. See Ex. 4 to Declaration of Tyler K. Firkins. Travis Garass also did not mention any abuse by his parents in a June 12, 1995 interview by CPS Worker Kate Carrow (Ex. 7 to Declaration of Tyler K. Firkins). Nor did he mention any such abuse in a July 8, 1995 interview with Dave Helvey of the Douglas County Sheriff's Office. (Exs. 27–29 to Declaration of Tyler K. Firkins).

to believe that Mr. Gausvik had committed those acts against Troy.

(*Id.* at 67).

Fore acknowledged that he did not disclose in his August 1995 affidavit of probable cause that by this time the prosecutor's office had established a policy of not filing charges based solely upon information supplied by Donna Everett. (*Id.* at pp. 68–69).[12] He acknowledged that he did not include in his affidavit any statement that the Garass children had denied sexual abuse to Dr. Jantzen. (*Id.* at 71). Fore says he does not "recall" having an understanding at the time he prepared his affidavit of probable cause that Troy Garass had denied being molested by his parents. (*Id.*)

Fore was asked whether he ever asked Troy Garass whether he felt pressured to make an allegation against his parents during the boy's June 5, 1995 interview by Perez. Fore says he "believes" he would have asked Troy Garass about that because it was customary for him (Fore) to do so and because at this time there had already been some claims that Perez was using improper interview techniques. (*Id.* at 78).

In his "Statement of Material Facts," plaintiff asserts Riesen and Fore knew that Perez made a false statement in his July 10, 1995 affidavit of probable cause when he wrote that plaintiff had been identified by at least eight children as the perpetrator of sexual abuse upon them. Plaintiff cites an Ex. 49 (attached to Declaration of Tyler K. Firkins) which is a

"Statement of Material Facts" apparently filed in *Green v. City of Wenatchee,* CS–01–072–RHW. The court fails to see how this has anything to do with Riesen's or Fore's knowledge concerning the veracity of Perez' July 10, 1995 statement. Indeed, the *Green* "Statement of Material Facts" says nothing about plaintiff and covers events only up to September 26, 1994.[13]

In his "Statement of Material Facts," plaintiff asserts prosecutors knew that allegations of sexual abuse by Donna Everett were false and could not serve as the basis for probable cause against plaintiff. Plaintiff then proceeds to cite multiple exhibits, but never explains how those exhibits show such knowledge by the prosecutors at the time plaintiff was charged and prosecuted (1995). The exhibits cited include Judge Friel's **1998** "Memorandum Decision On Reference Hearing," as well as Donna Everett's psychological records, and a host of police reports and notes from interviews with Donna Everett.

In his "Statement of Material Facts," plaintiff asserts the prosecutors knew the allegations made by Troy Garass were false and the product of coercion. Plaintiff, however, does not explain how Riesen or Fore would supposedly know that from the face of the police report filed by Perez detailing his June 5, 1995 interview with Garass (Ex. 4 to Declaration of Tyler K. Firkins). Perez testified at his deposition that although he had conversations with Riesen and Fore, those conversations did not go beyond what was contained in the

---

**12.** Riesen testified at his deposition that at some point an understanding was reached that cases would not be prosecuted solely on the basis of allegations made by Donna Everett. According to Riesen, this was because there were "multiple offenders." Furthermore, medical evidence which had been used to obtain a guilty plea from Donna Everett's father would not be helpful with respect to other alleged offenders and the prosecution

was unwilling to proceed merely on the basis of her statement against the statement of another alleged offender. (Riesen Depo. at 111–112).

**13.** Included with Ex. 49 is a transcript of a "Preliminary Appearance" in *State of Washington v. Green* which occurred on September 16, 1994.

police reports. (Perez Depo. at pp. 226–27; Ex. 77 to Declaration of Tyler K. Firkins). Plaintiff says the court should compare Perez' police report with notes from the interview taken by CPS worker Kate Carrow (Ex. 75 to Declaration of Tyler K. Firkins), but plaintiff does not say what this comparison is supposed to reveal in purportedly establishing that prosecutors knew allegations of abuse by Troy Garass had been coerced. Plaintiff also says the court should look at Dr. Jantzen's testimony (Ex. 76 to Declaration of Tyler K. Firkins), but does not say what the court is supposed to find there of any significance in showing how the prosecutors knew that allegations of abuse by Troy Garass had been coerced. Dr. Jantzen did say that all of the Garass children either denied to him they had been abused or did not respond when he asked them about abuse. This occurred during his June 1995 physical evaluation of the children (Troy, Travis, Delilah and Christa).

In his "Statement of Material Facts," plaintiff claims that Fore "misled the court, indicating that Perez and Carrow's interview of Troy on June 5, 1995–at which they finally extracted an accusation of abuse—was the first contact with the family." For this proposition, plaintiff cites Fore's August 10, 1995 Affidavit of Probable Cause (Ex. 32 to Declaration of Tyler K. Firkins). Nowhere in this affidavit does Fore assert explicitly or impliedly that June 5, 1995 was the first contact by Perez and Carrow with members of the Gausvik/Garass family.

In his "Statement of Material Facts," plaintiff asserts that Fore was aware of "inappropriate techniques employed by Perez and Carrow because he [Fore] participated in a number of investigations and interviews himself." It appears Fore conducted one interview, that being of Travis Garass on August 16, 1995. (Ex. 11 to Declaration of Tyler K. Firkins). Plaintiff asserts that Fore "failed to follow appropriate protocols for conducting child interviews, failed to appropriately record the questions asked and the answers given in near verbatim notes, tape recordings or video tapes of the interviews" and furthermore, "permitted Perez to destroy his notes." Ex. 11 appears to contain the notes of the interview which were taken by CPS worker Carrow who was also present, along with Perez. Plaintiff does not say how an examination of Ex. 11 is supposed to reveal that Fore failed to follow appropriate protocols for conducting child interviews.

In his declaration, Travis Garass says that his recollection of the August 16, 1995 interview was that "they were all staring at me, and they made it immediately clear that I was going to make allegations that day." He says they told him his parents had molested me and would not "take no for an answer" and so he finally relented and made "stuff" up about his parents.

Plaintiff has filed a declaration which contains a laundry list of accusations of prosecutorial misconduct, but it is obvious these are mere conclusions, wholly unsupported by his "personal knowledge" (i.e., "The prosecutor failed to disclose that the accusations against me had been extracted from Donna Everett only through methods that had by that time been proven capable of corrupting children's memory and recall ability;" "The County prosecutor failed to disclose to me the extraordinarily improper methods used to elicit the accusation from Troy").

Having carefully considered this evidence as a whole, the court is tempted to find there was no prosecutorial misconduct and that the decisions made by the prosecution were well within the ambit of its discretion. It is not necessary for the court to make that finding, however, because even if there were some instances of

misconduct, they are limited to plaintiff's case and furthermore, there were not enough of them to constitute a "pattern" which would have placed County Prosecutor Riesen on actual or constructive notice that he needed to do something in the way of training his staff. Hence, there was no deliberate indifference on the part of Chelan County. In reaching this conclusion, the court is mindful of the Ninth Circuit's statement in *Oviatt,* 954 F.2d at 1477–78, that "[w]hether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." This case represents an exception.

### 2. Public Defender Contract

■ Plaintiff contends his federal constitutional right to effective assistance of counsel was violated by Chelan County's "policy and custom of establishing no substantive requisites when awarding its public defender contract, opting instead to award the contract to the lowest bidder [Barker & Howard]." Plaintiff further contends his right to counsel was violated by Chelan County's policy and custom of "failing to supervise and monitor the public defender to ensure that the office was adequately funded and had adequate resources and that adequate and constitutionally mandated legal services [were] being provided."

Plaintiff has not cited any legal authority specifically holding that a county can incur § 1983 liability for how it awards its public defender contract. In *Miranda v. Clark County, Nevada,* 279 F.3d 1102 (9th Cir.2002), the plaintiff brought suit against Clark County, alleging it had deprived him of his Sixth Amendment right to effective assistance of counsel by failing to train the county's deputy public defenders. While this was a cognizable claim, the circuit found it had no merit:

> Rigsby is a law school graduate, a member in good standing of the state bar, and was hired for a deputy public defender position on the basis of his perceived abilities. Accordingly, the County's assignment of him to represent Miranda did not evince deliberate indifference to Miranda's right to effective assistance of counsel. The Sixth Amendment does not guarantee to Miranda, or any criminal defendant, the assistance of Perry Mason. That Rigsby had no previous experience defending a criminal defendant convicted of a serious offense is, without more, of no constitutional moment . . . .

*Id.* at 1111–12.

In *Miranda,* the public defender was directly employed by the county. The deputy public defenders were also employees of the county under the auspices of the county public defender. *Miranda* did not involve a situation where the county had contracted out its public defender services to a private law firm. Barker & Howard and its attorneys are not "employees" of Chelan County. Municipal liability can be had where a municipality fails to train its **employees**. While a county has an obligation to train its employees, the court fails to see why it would have an obligation to train an independent contractor and the employees of the independent contractor. It is the independent contractor, if anyone, who has the obligation to train its own employees. That, however, brings the court back to the question of whether a county can be held liable under § 1983 for the selection and/or funding of a contract public defender.

In *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the U.S. Supreme Court held that a public defender does not act under color of state law when performing a lawyer's traditional functions such as entering not guilty pleas, moving to suppress state's evidence, objecting to evidence at trial, cross-examining state's witnesses, and making closing

arguments. A public defender serves his traditional, and primary, role, by "advancing the undivided interests of his client," an "essentially[ ] private function, traditionally filled by retained counsel, for which state office and authority are needed." *Id.* at 318–19, 102 S.Ct. 445.

In *Miranda*, the Ninth Circuit concluded that plaintiff's complaint failed to state a claim against deputy public defender Rigsby because he had not acted under color of state law:

We observe, first, that Rigsby, though employed by the County, functioned as its adversary; he acted at all times on behalf of Miranda. Rigsby's conduct was not, nor could it have been, dictated by any State-imposed guidelines. [Citation omitted]. Rather, his decisions to assign *vel non* an investigator to track down particular leads or witnesses advanced the interest of only one party Miranda. Rigsby's conduct is, thus, easily distinguished from that of the public defender in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), who was deemed a state actor when making personnel decisions for the public defender's office. Branti was sued in his role as administrator, not lawyer. His hiring and firing decisions served the interests of his county employer and were the type of conduct easily amenable to administrative direction. Rigsby's actions were not administrative in these ways.

279 F.3d at 1108–09.

The Ninth Circuit added that while Rigsby's representation of the plaintiff may have been wholly inadequate, § 1983 does not create a remedy for all conduct that deprives a person of protected rights because the reach of § 1983 is limited to state action. *Id.* at 1109.

In *Clay v. Friedman,* 541 F.Supp. 500 (N.D.Ill.1982), plaintiff sued several public defenders, their supervisors, and the Cook County Office of the Public Defender under § 1983 based on the allegedly incompetent representation provided her in a criminal proceeding. The plaintiff alleged, among other things, that the public defenders were assigned excessive caseloads by the State and thus, prevented from attending to their cases properly; state action was involved in the hiring of incompetent lawyers, the failure to train them adequately, and the failure to terminate them when their incompetence became evident; and proper representation was prevented by the State's established method of transferring cases among public defenders. The court described these arguments as "because the State caused the malpractice, the public defenders themselves became states actors." The court concluded that *Polk County* was "quite clear" in rejecting that sort of argument. *Id.* at 410.

According to *Polk County:*

Because public defenders are paid by the State, it is argued that they are subject to supervision by persons with interests unrelated to those of indigent clients. Although the employment relationship is certainly a relevant factor, we find it insufficient to establish that a public defender acts under color of state law within the meaning of § 1983.

First, a public defender is not amenable to administrative direction in the same sense as other employees of the State. Administrative and legislative decisions undoubtedly influence the way a public defender does his work. State decisions may determine the quality of his law library or the size of his caseload. But a defense lawyer is not, and by the nature of his function, cannot be, the servant of an administrative superior. Held to the same standards of competence and integrity as a private lawyer, [Citation omitted], a public defender works under canons of professional responsibility that

mandate his exercise of independent judgment on behalf of the client. 'A lawyer shall not permit a person who recommends, employs or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services'. DR 5–107(B), ABA Code of Professional Responsibility (1976).

Second, and equally important, it is the constitutional obligation of the State to respect the professional independence of the public defenders whom it engages. This Court's decision in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), established the right of state criminal defendants to 'the guiding hand of counsel at every step in the proceedings against [them].' *Id.*, at 345, 83 S.Ct. 792, quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Implicit in the concept of a 'guiding hand' is the assumption that counsel will be free of state control. There can be no fair trial unless the accused receives the services of an effective and independent advocate. [Citations omitted]. At least in the absence of pleading and proof to the contrary, we therefore cannot assume that Polk County, having employed public defenders to satisfy the State's obligations under *Gideon v. Wainwright*, has attempted to control their action in a manner inconsistent with the principles on which *Gideon* rests.

454 U.S. at 321–22, 102 S.Ct. 445.

The mere fact Chelan County paid Barker & Howard to defend the plaintiff (and others charged with crimes in Chelan County) does not mean Barker & Howard acted under color of state law so as to make it potentially liable under § 1983 and in turn, Chelan County. Under *Polk*, it appears the critical question in determining whether Chelan County has any constitutional liability is whether it attempted to control Barker & Howard in a manner inconsistent with the State's obligation to provide counsel to indigent criminal defendants. In *Clay v. Friedman*, the district court read *Polk County* to say that state action could exist if the State controls how a public defender carries out his client's defense, not simply affect it in "collateral ways." Because Clay had pleaded only "administrative actions (akin to the caseload and library examples posed by the Supreme Court) that hampered the public defender's presentation of a defense," his claim was insufficient under *Polk County*. *Id.* at 411, 102 S.Ct. 445.[14]

It seems to this court that as a general rule, "funding" of the public defender is something which may affect a client's defense in a collateral way. A public defender has an ethical obligation to represent his client as best he can without direction or regulation from the State. There may be instances where lack of funding is so acute that it is tantamount to State control over how a public defender carries out his client's defense. There is insufficient evidence of that in this case, however.

In 1989, the Washington State Legislature enacted RCW 10.101.30 which provides:

Each county or city under this chapter shall adopt standards for the delivery of public defense services, whether those services are provided by contract, assigned counsel, or a public defender. Standards shall include the following:

14. Training or lack thereof could be considered the kind of thing that might "control" a client's defense and hence, **a county which fails to train its public defender employees** could potentially be held liable under § 1983 for its "state action." In *Miranda*, the Ninth Circuit apparently assumed the existence of state action with regard to the failure to train claim asserted in that case.

Compensation of counsel, duties and responsibilities of counsel, case load limits and types of cases, responsibility for expert witness fees and other costs associated with representation, administrative expenses, support services, reports of attorney activity and vouchers, training, supervision, monitoring and evaluation of attorneys, substitution of attorneys or assignment of contracts, limitations on private practice of contract attorneys, qualification of attorneys, disposition of client complaints, cause for termination of contract or removal of attorney, and nondiscrimination . . . .

Plaintiff contends Chelan County failed to abide by this statute and enact any standards until after plaintiff's criminal trial, appeal and personal restraint petition were concluded. In 1994, Barker & Howard was selected to be the contract defender. Plaintiff contends that "with no qualitative standards in place for awarding the public defender contract, and without any understanding of how the bid amounts were reached," Chelan County awarded the contract to the lowest bidder, Barker & Howard, simply by virtue of the fact that it had submitted the lowest bid. Barker & Howard's bid was $100,000 less than the next lowest bidder. Barker & Howard was required to pay from the lump sum all fees and costs associated with retaining "conflict attorneys." [15]

The proliferation of the "Wenatchee Sex Ring" cases resulted in Barker & Howard having to retain a number of "conflict attorneys" which, according to plaintiff, became a financial drain on Barker & Howard and "created a greater risk of public defender lawyers failing to defend their clients, and specifically failing to challenge the conduct of CPS and Perez as well as the other evidence presented by the state." In a letter to the Chelan County Commissioners dated September 20, 1995, a copy of which was sent to Chelan County Prosecutor Riesen, Barker & Howard advised of their financial problems because of the "Wenatchee Sex Ring" cases and the need to hire multiple "conflict attorneys." (Ex. 24 to Declaration of Tyler K. Firkins). Plaintiff says that despite being alerted of Barker & Howard's "financial motive to settle cases as quickly as possible," Chelan County did not investigate, monitor or supervise the level of services being provided by Barker & Howard.

Plaintiff asserts the "inherent financial conflict of interest involved in awarding public defender contracts to the lowest bidder" resulted in Barker & Howard doing nothing to challenge the unlawful seizure of the Gausvik children by the Wenatchee Police Department and Barker immediately recommended to plaintiff that he plead guilty before Barker had interviewed a single witness and "despite facially invalid probable cause." Plaintiff contends that had the County undertaken to comply with the requirements of RCW 10.101.30, "it could have averted the crisis that resulted from the underfunding of the public defender's office that contributed to the conviction of so many 'sex crimes' defendants, including [plaintiff]."

Plaintiff recognizes that a violation of state law, by itself, is insufficient to state a claim under § 1983 since § 1983 is concerned with vindicating violations of federal law. Plaintiff contends, however, that Chelan County's failure to follow RCW 10.101.30 demonstrates the county's deliberate indifference to the federal constitutional right to effective assistance of counsel.

---

15. In the event Barker & Howard had a conflict with respect to a particular defendant, it was charged with finding and paying an attorney outside the firm to represent that defendant.

Chelan County discharged its basic constitutional obligation under *Gideon* by contracting with Barker & Howard to provide legal services to indigent criminal defendants.[16] Based on *Polk County*, if plaintiff did not receive effective assistance of counsel, it was because of Barker & Howard and not because of Chelan County. Barker & Howard had an ethical obligation to provide the best defense possible to plaintiff, regardless of who was paying it to provide that defense and how much was being paid. If Barker & Howard made decisions about plaintiff's criminal representation based on economic self-interest, that was a violation of its ethical obligation to their client.[17] The blame cannot be passed to Chelan County.[18] To the extent plaintiff alleges Chelan County's underfunding of the public defender contract and failure to abide by the standards of RCW 10.101.30 "controlled" Barker & Howard's decision concerning representation of plaintiff, said allegations are conclusory and without evidentiary support.

## C. Public Defender Liability under 42 U.S.C. § 1983

■ Based on *Polk County*, Barker & Howard, Jeffrey Barker and Keith Howard seek summary judgment, contending they are not "state actors" for § 1983 purposes.

Citing *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), plaintiff contends he is suing the Barker & Howard defendants in their capacity as "administrators" instead of as lawyers. In *Branti*, the Supreme Court found that a public defender acted under color of state law when making hiring and firing decisions on behalf of the State. Two assistant public defenders, both Republican, brought suit under 42 U.S.C. § 1983 to enjoin a Democrat, who had recently been appointed county public defender, from discharging them from their assistant public defender positions. The Supreme Court found the assistant public defenders could not be discharged solely because of their political beliefs. In *Polk County*, the Supreme Court left open the possibility that a public defender could act under color of state law while performing certain administrative and possibly investigative functions. 454 U.S. at 325, 102 S.Ct. 445.

Plaintiff asserts Jeffrey Barker acted in an "administrative" capacity as supervisor and trainer of his "inexperienced" staff and his alleged failure in that regard constitutes state action under § 1983 for which he and his firm are liable. Plaintiff says that "as sole alleged owner of Barker and Howard, [Barker] should have created an administrative method for supervising and training his staff."

First, the court notes that Barker himself acted as counsel for plaintiff in the criminal proceedings. As one of the principals in the law firm, he did not supervise himself. Secondly, it is abundantly clear that plaintiff's dispute is with how Barker discharged his functions as lawyer on behalf of plaintiff. Plaintiff asserts that examples of Barker's ineffective assistance abound, "from the failure to investigate or demand production of documents through

---

**16.** The court notes that the county eventually came up with the extra money ($100,000) which Barker requested in his September 20, 1995 letter. (Barker Depo. at p. 45).

**17.** Barker acknowledges "as an attorney, you're subject to an ethical duty to the client versus making money." (Barker Depo. at p. 22).

**18.** The court notes that in the September 20, 1995 letter Barker & Howard wrote to the Chelan County Commissioners requesting additional funds (Ex. 24), it is evident that Barker & Howard considered their initial funding to be adequate, but that the unanticipated development of the "Wenatchee Sex Ring" cases changed things.

the failure to cross-examine critical state witnesses, including the lead detective on the case." Under *Polk County,* a public defender is not a "state actor" when he acts as a lawyer on behalf of an indigent criminal defendant.[19]

Plaintiff has cited no authority for the proposition that a contract public defender can be held liable as an "administrator" under § 1983 for failure to supervise or train staff. *Branti* is clearly distinguishable since it involves hiring and firing by a County Public Defender based on political beliefs and has nothing to do with lawyerly functions. It seems to this court that failure to supervise and train defenders to properly discharge their lawyerly functions resulting in ineffective assistance of counsel is indistinguishable from the lawyerly functions themselves and therefore, falls under the ambit of *Polk County.* Besides that, a public defender may be liable under state tort law for malpractice and therefore, a plaintiff is not entirely deprived of a civil remedy for a public defender's lawyerly misdeeds. *Polk County,* 454 U.S. at 312, 102 S.Ct. 445 ("And of course we intimate no views as to a public defender's liability for malpractice in an appropriate case under state tort law").

The court concludes that Barker & Howard, Jeffrey Barker and Keith Howard are not "state actors" for the purposes of plaintiff's §§ 1983 and 1985 claims.

### D. Common Law Claims

Plaintiff's First Amended Complaint alleges causes of action for intentional and/or negligent infliction of emotional distress, negligence, false arrest and false imprisonment, respondeat superior liability and legal malpractice/negligence. The legal malpractice/negligence claim is, of course, specifically directed at defendants Barker & Howard, P.S., Inc., Jeffrey Barker and Keith Howard. The intentional and/or negligent infliction of emotional distress claim is apparently directed at all named defendants. The negligence claim is specifically directed at Chelan County and the City of Wenatchee. The false arrest/false imprisonment claim is specifically directed at City of Wenatchee, Chelan County, Perez, Badgley and Tilly. Plaintiff contends City of Wenatchee and Chelan County are liable on the basis of respondeat superior for the intentional torts and negligence of "individually named defendants."[20]

Subject matter jurisdiction over these claims is based on 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . .").[21] Pursu-

---

**19.** Plaintiff has alleged no facts, nor offered any evidence that there was a conspiracy between Barker & Howard and state officials during the criminal prosecution of plaintiff. When such a conspiracy is established, the public defender is subject to liability under § 1983 because the requisite state action has been established. *Tower v. Glover,* 467 U.S. 914, 919–20, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

**20.** None of the individually named defendants, however, are associated with Chelan County. Perez, Badgley and Tilly are all associated with the City of Wenatchee.

**21.** Although plaintiff pleads diversity jurisdiction (28 U.S.C. § 1332) in his First Amended Complaint, it is apparent there is not complete diversity between the plaintiff and the defendants. Therefore, this court's original subject matter jurisdiction is based on the existence of a federal question (28 U.S.C. § 1331) because of plaintiff's 42 U.S.C. §§ 1983 and 1985 claims and plaintiff's common law claims fall under the court's supplemental jurisdiction.

ant to § 1367(c)(3), the court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."

Because the court is granting judgment for defendants Chelan County, Barker & Howard, Jeffrey Barker and Keith Howard on the federal claims asserted against them, it chooses to dismiss without prejudice the common law tort claims asserted against those defendants. Those claims can be reasserted in state court if plaintiff wishes to pursue them. Retaining and trying the common law tort claims against these defendants could lead to speculation and confusion by the jury in the event that federal claims against the other defendants (City of Wenatchee, Perez, Badgley and/or Tilley) were tried at the same time.

## IV. CONCLUSION

Chelan County's Motion for Summary Judgment (Ct.Rec.53) joined in by defendants Barker & Howard, P.S., Inc., Jeffrey Barker and Keith Howard (Ct.Rec.68) is **GRANTED.**[22] The District Executive shall enter judgment for Chelan County, Barker & Howard, P.S., Inc., Jeffrey Barker and Keith Howard on the 42 U.S.C. §§ 1983 and 1985 claims brought against them by plaintiff. All common law claims against these defendants are **DISMISSED without prejudice** to their being reasserted in state court.

**IT IS SO ORDERED.** The District Executive is directed to enter this order and forward copies to counsel.

---

**22.** On July 9, 2002, defendants Barker & Howard, Jeffrey Barker and Keith Howard filed a separate summary judgment motion (Ct.Rec.123) seeking judgment on all of plaintiff's federal and state claims. This order renders that motion moot and it is therefore, **DISMISSED**.

Likewise, plaintiff's "Motion to Disqualify Lee Smart Cook & Patterson" as counsel for defendants Barker & Howard, Jeffrey Barker and Keith Howard (Ct.Rec.102) is **DISMISSED** as moot. The court would ultimately arrive at the legal conclusion that these defendants are not "state actors" for § 1983 purposes regardless of who is representing

them. Even if there was a basis for disqualification, this court would *sua sponte* grant summary judgment to these defendants. This would be appropriate since plaintiff has received adequate notice of the legal issue whether defendants are "state actors" and has had an adequate opportunity to present argument and evidence in response. See *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548 and *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311–12 (9th Cir.1982). Of course, disqualification may still be an issue with regard to the common law claims over which this court has declined to exercise supplemental jurisdiction.